REGAN, Judge
(dissenting).
The precise query which this litigation poses on appeal is:
Does the substitution of an heir as a party plaintiff for the initial plaintiff, now deceased, within the period of five years, constitute “steps in the prosecution” of the case, such as will interrupt the abandonment of the suit?
In my opinion, a careful analysis of this question, considering the legal history of Revised Civil Code Article 3519 and the amendment thereto, LSA-C.C., will reveal that the substitution of an heir for the initial plaintiff was not an active, but a completely passive gaature occurring in connection with the case, therefore, it should be *344 judicially pronounced abandoned in conformity ' with the plain legislative intent manifested by virtue of Act 107 of 1898 amending Revised Civil Code Article 3519, LSA-C.C.
In Augusta Sugar Co. v. Haley, 1927, 163 La. 814, 112 So. 731, 732, the Supreme Court, in discussing the amendment to Article 3519, asserted:
“We think that a step in the prosecution of a suit means something more than a mere passive effort to keep the suit on the docket of the court; it means some active measure taken by plaintiff, intended and calculated to hasten the suit to judgment. * * *
“ * * * it is well known that the very purpose of the act was to put an end to the then prevailing practice of filing suit to interrupt prescription, and then letting the suit hang perpetually over the head of the defendant unless he himself should force the issue; in other words, of putting on the defendant the burden of showing that plaintiff’s claim was unfounded.” (Italics ours.)
The substituted heir must take the pending lawsuit as he finds it. He does not enjoy any better position than the initial plaintiff would have enjoyed insofar as the five year abandonment clause is concerned, until he participates actively and not accidentally therein.
Step is defined as- an advance or movement; progress. Prosecute is defined as to follow or pursue. Passive is defined as not active, but acted upon.
Hence “steps in the prosecution thereof”, the terminology used in Article 3519, as I interpret them, mean the advance movement pursuing the litigation to its end, therefore, the article was not intended to cover a mere passive gesture occurring as an accidental incident in relation to the pending litigation.
As I understand the rationale of the majority opinion, the simple substitution of a party plaintiff could continue, ad infinitum, every four years, eleven months, twenty-nine days, and the litigation would never fall within the category of an abandoned case. In other words, such passive substitution of parties plaintiff insures the case’s immortality and thus defeats the legislative intent in amending LSA-Civil Code, Article 3519 and recreates the confusion which existed prior thereto. The decision is one of a succession of judicial steps nullifying the legislative intent and the most advanced legal thought is adverse to the judiciary encroaching upon the legislative function of making rather than interpreting the law.
In the ultimate, with the passage of years, the court is confronted with a stale and petrified lawsuit, which the philosophy of jurisprudence has always viewed with disfavor because of its obvious militant effect upon the rendition of justice between the litigants.
In the last analysis, the opinion appears to perform the judicial miracle of resurrecting a legal corpse despite the intent of mortality plainly manifested by Act 107 of 1898 amending Revised Civil Code, Article 3519, LSA-C.C.
.1 have taken cognizance of Augusta Sugar Co. Ltd. v. Haley, supra, a Supreme Court decision and Seligman v. G. A. Scott & Bros., 1931, 17 La.App. 486, 134 So. 771, a Second Circuit Court of Appeal decision (not cited in the majority opinion),, the dictum of each, in my opinion, supports the majority view, however, the ratio decidendi is not in conformity therewith.
The legislative intent expressed in the foregoing amendment to Article 3519 is not a newly enunciated principle which, in the ultimate, is designed to facilitate the rendition of justice. It is so old that in the history of jurisprudence the memory of man hardly runneth to the contrary. In this connection Justice Clark observed:
“The ‘law’s delay’ is assigned by Hamlet as one of the great evils of life, and the barons at Runnymede thought is so great a one that they exacted the insertion of a guarantee against it in Magna Charta — a guaran *345 tee which has been copied into the Constitution of every American State * * * (and which is to be found in Article 1, Section 6 of our own Bill of Rights). This guarantee, so notably won, so carefully retained for so many ■centuries, and still incorporated into our organic law, that ‘justice shall be administered without delay’ is not a mere rhetorical flourish — it is a constitutional right.”
Gladstone almost one hundred years ago •asserted “Justice delayed is justice denied.”
I am of the opinion that the trial judge was correct when he judicially pronounced the litigation abandoned in conformity with the plain legislative intent manifested by virtue of Act 107 of 1898 amending Revised •Civil Code Article 3519.
I respectfully dissent.